# IN THE SUPREME COURT OF IOWA

No. 13–0778

Filed May 2, 2014

**DAVID P. GARR JR.** and **JULIE A. GARR,**

Appellees,

vs.

**CITY OF OTTUMWA, IOWA,**

Appellant.

Appeal from the Iowa District Court for Wapello County, Daniel P. Wilson, Judge.

City appeals the district court's denial of its motion for judgment notwithstanding the verdict after the jury awarded the plaintiffs damages for property damage allegedly caused by the City's negligent storm water management. **REVERSED AND REMANDED.**

Mark W. Thomas and Robert J. Thole of Grefe & Sidney, P.L.C., Des Moines, for appellant.

John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellees.

**ZAGER, Justice.**

Property owners sued a city alleging the city negligently approved a development that caused flooding to the downstream property owners' home. A jury returned a verdict in favor of the property owners and awarded them damages. The district court then denied the city's motion for judgment notwithstanding the verdict, and the city appealed. We retained the appeal. For the reasons set forth below, we reverse.

## I. Background Facts and Proceedings.

In the 1940s, the federal government constructed an officers' club at 3105 North Court Road in Wapello County, Iowa. At some point, the club was remodeled into a residence. In 1971, the City of Ottumwa (the City) annexed the property and the surrounding area. In 1980, the City declared the property to be within a 100-year floodplain. In December 1997, David and Julie Garr purchased the property at 3105 North Court Road to use as their residence.

Located north-to-northwest of the Garrs' residence is a golf course. The golf course was constructed in the 1960s and was annexed by the City in 1975. The City maintains the golf course. In 2001, an irrigation pond was dug and a new sprinkler system was installed at the golf course. Drainage tile on the golf course, damaged during the sprinkler system installation, was also repaired. Storm water from the golf course drains into Little Cedar Creek.

Located northwest of the golf course and the Garrs' property is Quail Creek Addition. The City approved Quail Creek Addition in 1995, and it sits on approximately forty-four acres of land. When the Garrs bought their home in 1997, only a few houses had been constructed at Quail Creek Addition. Since approval of the addition, approximately twenty-eight homes have been constructed in the addition, most of them

after 2000. Storm water from Quail Creek Addition drains into Little Cedar Creek, which lies south of the addition.

Located to the south of the Garrs' residence, approximately sixty-four feet from the Garrs' garage, is Little Cedar Creek. The creek flows behind Quail Creek Addition, through the golf course in a southeasterly direction, behind the Garrs' residence, and ultimately through a box culvert under state-owned Highway 63/149. The highway sits to the east of the Garrs' residence and runs in a north–south direction. The distance from the Garrs' garage to the shoulder of Highway 63/149 is about sixty-eight feet.

Like water from Quail Creek Addition, water from the Garrs' property and the golf course drains into Little Cedar Creek. In all, the Little Cedar Creek watershed (the area of land from which all of the water drains to the same place) is made up of about 2075 acres. Quail Creek Addition comprises about two percent of the total watershed.

According to David Garr, from the time the Garrs purchased their home until 2002, Little Cedar Creek rose above its bank a couple of times each year, and the Garrs occasionally had a trickle of water into their basement. In 2002, the Garrs waterproofed and remodeled their basement. Two years later they began to experience problems from the flooding of Little Cedar Creek. Each year, flooding from the creek would get worse, with the water from the creek rising farther above its banks. Water eventually permeated the ground and put pressure on their basement wall.

The Garrs estimated that between 2004 and 2010, they had water in their basement at least 100 different times. In 2010 alone, David estimated there was at least one foot of water in their basement on at least twenty-five different occasions. On one occasion in 2008, water

filled the Garrs' basement to its seven-foot ceiling. On this occasion, the Garrs filed an insurance claim and received $5000. They used the money to clean up the basement and replace damaged property.

David estimated that at least a dozen times between 2008 and 2010, he spoke with Keith Caviness, a member of the Ottumwa City Council. According to Caviness, however, he spoke with David one time in 2008 and not again until August 2010. When they spoke, David asked Caviness to have the City investigate the flooding problem.

David also tried to contact the Ottumwa Public Works director on multiple occasions, speaking with him just once in April 2010. According to David, despite a general agreement to have an employee come to the Garrs' property and examine Little Cedar Creek, the City never sent anyone from the public works department to investigate the flooding.

The public works director, Larry Seals, testified he came to the Garrs' property sometime in 2010. During this encounter, Seals fielded David's suggestion that the City clear the creek and straighten it. According to Seals, he explained to David that straightening the creek would decrease the time it would take for creek water to get to the culvert under the highway, thereby increasing the peak water level and causing flooding. In response to David's further suggestion that the City clean out the culvert, Seals explained the culvert was under the jurisdiction of the Iowa Department of Transportation and David would have to ask the department to clean the culvert.

On August 10, 2010, water from Little Cedar Creek flooded the Garrs' backyard and filled their basement. Despite David's calls to Larry Seals and Keith Caviness, nobody from the City came to his property. On August 20, a major rainstorm hit Ottumwa and the surrounding

area. Around 4:30 p.m. on this date, after returning to Ottumwa from a trip, David Garr received a frantic call from his wife, Julie. Julie, who was on her way to the couple's home, could not get to the house because water on the road blocked her path. David estimated that when he arrived about fifteen minutes later, the water on Highway 63/149 was twenty-five feet deep. The water around the couple's home had risen to the doorknob on the front door. The flooding caused extensive damage.

In August 2010, parts of Iowa, including Wapello County where Ottumwa is located, were declared a disaster area. The declaration made disaster assistance available under the aegis of the Federal Emergency Management Agency (FEMA) for areas struck by severe storms and flooding between June 1, 2010, and August 31, 2010. The Garrs applied for and received about $30,000 in disaster assistance because of damage to their home and personal property caused by flooding. Estimates of the total cost to repair the Garrs' home were around $145,000.

In October 2011, the Garrs filed a lawsuit against the City. They alleged the City negligently managed storm water by approving Quail Creek Addition, by failing to establish storm water detention projects at Quail Creek Addition and the golf course, and by failing to comply with storm water management policies. After the district court denied the City's motion for summary judgment, the case proceeded to trial. At trial, the Garrs presented exhibits and testimony from several witnesses, including an expert who testified about causation. After the Garrs rested their case, the City moved for a directed verdict, but the district court reserved its ruling. After the close of all the evidence, the City renewed its motion for a directed verdict. The district court again reserved its ruling and submitted the case to the jury, which returned a verdict in favor of the Garrs. The jury awarded the Garrs damages of $84,400.

The City's motion for judgment notwithstanding the verdict or a new trial was denied.

The City timely appealed, and we retained the appeal.

## II.  Issues on Appeal.

The City appeals on several grounds.  First, the City argues the Garrs' claim is barred by the fifteen-year statute of repose contained in Iowa Code section 614.1(11) (2011).  Second, the City argues it is immune under three separate provisions of Iowa's Municipal Tort Claims Act: section 670.4(3) (exempting any municipality from liability for discretionary functions), section 670.4(8) (exempting any municipality from liability for claims arising from negligent design or specification of public improvements or facilities that were constructed according to generally recognized engineering criteria), and section 670.4(10) (exempting any municipality from liability for an officer or employee's act or omission in issuing a permit if the damage was caused by an event outside the municipality's control).  *See* Iowa Code § 670.4(3), (8), (10).[1] Third, the City argues the Garrs' expert's testimony was insufficient to establish a causal connection between the City's allegedly negligent conduct and the Garrs' damages.  Finally, the City argues it was prejudiced by improperly admitted evidence and statements made by plaintiffs' counsel during closing arguments.  Because we find the causation issue dispositive, "we address only that issue."[2] *See Gerst v.*

[1]In 2013, as part of nonsubstantive code corrections, Iowa Code section 670.4 underwent renumbering.  *See* 2013 Iowa Acts ch. 30, § 196.  The renumbered sections corresponding to those under which the City sought immunity are section 670.4(1)(*c*), (*h*), and (*j*).  *See id.*

[2]The City did not argue on appeal that the Garrs failed to establish the City breached its duty of care.  Therefore, we assume for purposes of this appeal that the City breached its duty of care.

*Marshall*, 549 N.W.2d 810, 813 (Iowa 1996) (addressing only the issue of causation when it was found to be dispositive).

### III. Standard of Review.

We review a district court's ruling denying a motion for judgment notwithstanding the verdict for correction of errors at law. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). On review, we "determine whether sufficient evidence existed to justify submitting the case to the jury at the conclusion of the trial." *Lee v. State*, 815 N.W.2d 731, 736 (Iowa 2012). To justify submitting the case to the jury, substantial evidence must support each element of the plaintiff's claim. *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010). "Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings." *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 790 (Iowa 2009). We view "the evidence in the light most favorable to the nonmoving party." *Id.*

### IV. Discussion.

In a negligence cause of action, the plaintiff must prove causation. *See Faber v. Herman*, 731 N.W.2d 1, 7 (Iowa 2007) (calling causation "an essential element" in a negligence cause of action). Until recently, we described causation as consisting of two components: cause in fact and proximate, or legal, cause. *See, e.g.*, *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 883 (Iowa 2009) (noting "that causation has two components: cause in fact and legal cause"); *Faber*, 731 N.W.2d at 7. We no longer refer to proximate or legal cause; instead, we use a different formulation, scope of liability. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009) (adopting the scope-of-liability concept).

To determine whether the defendant in fact caused the plaintiff's harm, we apply a "but-for" test. *Berte v. Bode*, 692 N.W.2d 368, 372 (Iowa 2005). Under that test,

> "the defendant's conduct is a cause in fact of the plaintiff's harm if, but-for the defendant's conduct, that harm would not have occurred. The but-for test also implies a negative. If the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm."

*Id.* (quoting Dan B. Dobbs, *The Law of Torts* § 168, at 409 (2000) [hereinafter Dobbs, *The Law of Torts*]); *accord Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 774 (Iowa 2006).

Causation is ordinarily a jury question. *Thompson*, 774 N.W.2d at 836. In some cases, however, causation may be decided as a matter of law. *See, e.g., Faber*, 731 N.W.2d at 11 (deciding as a matter of law there was no causation between attorney's negligence and the damages sought by the plaintiff); *Gerst*, 549 N.W.2d at 818–19 (upholding district court's grant of summary judgment where plaintiffs failed to produce sufficient evidence on causation).

Cause in fact must exist between the City's negligence and the damages sought by the Garrs. *See Faber*, 731 N.W.2d at 7 (explaining a causal connection must exist between defendant's breach and the damages sought by the plaintiff). To assess the existence of a causal connection, we begin with the claims of negligence on which the jury was instructed. *See id.* at 7–11 (analyzing for a causal connection with damages each of four negligence claims on which the jury was instructed); *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999) ("Before reviewing the evidence of causation, it is helpful to note the specifications of negligence that were claimed to have caused the plaintiff's injury."). In this case, the jury was instructed the Garrs

alleged the City was negligent by failing to: (1) protect downstream property owners from increased water flow due to development approved by the City that led to the Garrs' flooding and property damage; (2) establish storm water detention projects to protect the Garrs and other downstream property owners from increased water flow caused by development approved and managed by the City; and (3) comply with its policies regarding storm water management and flooding. We now evaluate the evidence presented to support the Garrs' claims these negligent acts caused their injuries. *See Faber*, 731 N.W.2d at 7; *Hasselman*, 596 N.W.2d at 546.

To establish causation, the Garrs presented the expert testimony of Dr. Stewart Melvin, a former college professor who specializes in hydrology, the study of water's movement in the environment. Dr. Melvin testified that he had evaluated Quail Creek Addition's water control measures and found water from the addition discharges into Little Cedar Creek. When asked by the Garrs' counsel whether Quail Creek Addition had an effect on Little Cedar Creek, Dr. Melvin responded, "It's had some. I can't tell exactly how much right now, but it's had some." On cross-examination, the City's counsel established Dr. Melvin had not performed exact calculations supporting his conclusion that developing Quail Creek Addition had an effect; rather, Dr. Melvin relied on his estimations of water depths and flow in the area.

Those estimates were presented in a report prepared by Dr. Melvin that was entered into evidence at the trial. The report concedes not having specific information about sizes of culverts, ponds, and other landmarks in the area surrounding the Garrs' home because it relied on aerial photos. Nevertheless, the report estimates "peak flows from different sized storms in the 2000-acre watershed [north of] the US

Highway 63[/149] box culvert directly [southeast of] Mr. Garr's house." According to the report, if a rainstorm dropped 5.5 inches of rain in twenty-four hours, which according to the report would result in a twenty-five-year flood, flooding would occur to the first floor of the Garrs' home. If it rained 6.1 inches in twenty-four hours, which according to the report would result in a fifty-year flood, the first floor of the Garrs' home would be flooded with three feet of water. In the report, Dr. Melvin acknowledged his understanding that the flood underlying the Garrs' lawsuit "put approximately 4 [feet] of water above the floor of the Garr residence and water was running over the road." The report thus implies the storm that struck the Ottumwa area on August 20, 2010, dropped more than 6.1 inches of rain in twenty-four hours.

On cross-examination, Dr. Melvin admitted he had heard reports that as much as ten inches of rain fell on the 2000-acre watershed on August 20, 2010. If true, that amount of rainfall would have far exceeded a 100-year-flood event, which, according to Dr. Melvin's report, was a storm during which 6.8 inches of rain falls in twenty-four hours. The report makes clear that 6.8 inches of rain in twenty-four hours would have caused water from the creek to flow over US Highway 63/149.

Evidence confirmed water did flow over US Highway 63/149 on August 20, 2010. The water was deep enough to enable (or require) sheriff's deputies to use jet skis to rescue flood victims. In fact, David estimated the water on the highway was twenty-five feet deep. The evidence confirms a significant, rare rainstorm occurred in the area of the Garrs' home on August 20, 2010.

The City's counsel challenged Dr. Melvin with this evidence. The City's counsel asked:

> Q. [W]ould you agree with me that if, in fact, there . . . was 10 inches of rain that fell in a very short period of time in that drainage area, then there was going to be water in the plaintiff's home no matter what? A. Yes.
>
> Q. No matter whether Quail Creek [Addition] existed or not; correct? A. Yes.

Before the City's attorney could ask another question, Dr. Melvin broke in: "Let me qualify. If there was 10 inches of rainfall in that period, probably when you get that kind of a quantity, the effects of hardly anything makes any difference. It's just the rainfall."

However, there may be more than one cause in fact of a plaintiff's damages. *See State v. Hennings*, 791 N.W.2d 828, 836 (Iowa 2010) (" 'An actor's tortious conduct need only be *a* factual cause of the other's harm.' " (quoting Restatement (Third) of Torts § 26 cmt. *c*, at 347 (2010))); Dobbs, *The Law of Torts* § 168, at 410 ("Nothing is the result of a single cause in fact."); *see also, e.g., Stevens v. Des Moines Indep. Cmty. Sch. Dist.*, 528 N.W.2d 117, 118, 119–21 (Iowa 1995) (holding district court erred in giving instruction on superseding cause when plaintiff alleged school failed to adequately supervise hall monitor who assaulted the plaintiff). Thus, the major rainstorm is not, in and of itself, a cause that relieves the City of its liability for the Garrs' damages. There is no evidence, however, that the City's negligence caused the Garrs' damages.

The question posed to Dr. Melvin by the City's counsel, a counterfactual, goes to the core of the but-for causation test. *See Faber*, 731 N.W.2d at 11 (concluding that although an attorney negligently drafted an illegal stipulation in a qualified domestic relations order, the damages would have been the same if the attorney had drafted a legal stipulation); *see also* David W. Robertson, *The Common Sense of Cause in Fact*, 75 Tex. L. Rev. 1765, 1770 (1997) (explaining the but-for causation test requires "using the imagination to create a counterfactual

hypothesis"). In other words, Dr. Melvin's answers confirmed that no reasonable efforts by the City to control upstream drainage, or other flood control measures, could have prevented the flooding to the Garrs' property in such a heavy rain event. Therefore, the damage to the Garrs' property, which the evidence established sat in a 100-year floodplain, would have occurred regardless of any negligence by the City. *See Berte*, 692 N.W.2d at 372 (" 'If the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm.' " (quoting Dobbs, *The Law of Torts* § 168, at 409)). Hence, Dr. Melvin's testimony suggests the City's negligent approval of Quail Creek Addition and its management of storm water were not actual causes of the Garrs' damages. Thus, although Dr. Melvin presented expert testimony on the causal connection between the City's negligent approval of Quail Creek Addition and the Garrs' damages, the testimony was insufficient to create a jury question.

Though he offered his opinion about drainage control measures that could be used on a golf course, Dr. Melvin never testified about any causal connection between the sprinkler system, the irrigation pond, and the drainage tiles added to the golf course in 2001 and the Garrs' damages. Expert testimony is not necessary to establish causation in all negligence cases. *See, e.g., Vaughn v. Ag Processing, Inc.*, 459 N.W.2d 627, 636 (Iowa 1990) ("Questions of causation which are beyond the understanding of a layperson require expert testimony."). We have explained that "it is unnecessary to present expert testimony on causation in those situations in which the subject 'is within the common experience of laypersons.' " *Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 83 (Iowa 2002) (quoting *Welte v. Bello*, 482 N.W.2d 437, 441 (Iowa 1992)), *abrogated on other grounds by Thompson,*

774 N.W.2d at 839. On the other hand, when the connection between the defendant's negligence and the plaintiff's harm is not within the layperson's common knowledge and experience, "the plaintiff needs expert testimony to create a jury question on causation." *Doe*, 766 N.W.2d at 793.

Courts have found that establishing a causal link between the topographical changes and flooding requires expert testimony. *See Hendricks v. United States*, 14 Cl. Ct. 143, 149 (1987) ("Causation of flooding is a complex issue which must be addressed by experts."); *Herriman v. United States*, 8 Cl. Ct. 411, 420 (1985) (discounting the testimony of laypeople in relation to expert testimony in a flooding case); *Davis v. City of Mebane*, 512 S.E.2d 450, 453 (N.C. Ct. App. 1999) (holding expert testimony necessary to establish dam caused flooding). We believe the issue whether the flooding that damaged the Garrs' property was caused by approval of a residential development and alterations to a golf course is beyond the common understanding of a juror. Therefore, expert testimony on causation was required. *See Vaughn*, 459 N.W.2d at 636. Dr. Melvin testified as to the alterations to the golf course, but he offered no testimony about the causal connection between those alterations and the Garrs' damages. Because there was no expert testimony of any sort on this causal connection, the evidence on causation was insufficient. *See Gerst*, 549 N.W.2d at 819 (explaining an expert must, at a minimum, testify there was a possibility of a causal connection between negligence and damages); *Vaughan*, 459 N.W.2d at 637 (concluding evidence was insufficient to establish causation when plaintiff failed to present expert testimony on an issue for which it was required).

In sum, given Dr. Melvin's testimony the flooding that damaged the Garrs' property would have occurred regardless of whether Quail Creek Addition was built and the Garrs' failure to present expert testimony that the City's other negligent conduct caused their damages, there was not substantial evidence from which a jury could conclude the City's negligence caused the Garrs' damages. *Cf. Steuben v. City of Lincoln*, 543 N.W.2d 161, 163–64 (Neb. 1996) (concluding plaintiffs failed to prove proximate cause because they offered no proof that the city's approval of developments and golf course irrigation increased surface water drainage during a flood). We therefore conclude the district court erred by denying the City's motion for judgment notwithstanding the verdict.

## V. Conclusion.

As substantial evidence in the record did not support causation, there was insufficient evidence to support submitting the case to the jury. Therefore, the district court erred by denying the City's motion for judgment notwithstanding the verdict. We reverse the judgment entered by the district court and remand for entry of judgment in favor of the City.

**REVERSED AND REMANDED.**