# IN THE COURT OF APPEALS OF IOWA

No. 18-2086
Filed August 7, 2019


**JAYNE A. INTLEKOFER, JEFFREY C. INTLEKOFER, CATHERINE A. INTLEKOFER and STEPHEN J. INTLEKOFER,**
    Plaintiffs-Appellants,

**vs.**

**REITBERRY RENTAL PROP., LLC, and CITY OF MONTICELLO, IA,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Jones County, Paul D. Miller, Judge.


        Property owners appeal the district court's grant of summary judgment in their negligence action against the City and a neighboring business.  **AFFIRMED.**


        Christopher M. Soppe of Pioneer Law Office, Dubuque, for appellant.

        Bradley J. Kaspar and Terry J. Abernathy, Cedar Rapids, for appellee City of Monticello.

        Dillon J. Besser and William H. Roemerman of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee Reitberry Rental Properties, LLC.


        Considered by Vaitheswaran, P.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

After suffering water damage to their property in downtown Monticello, the Intlekofers[1] sued the City of Monticello (the City) and a neighboring business. They alleged the defendants' construction of a parking lot and a new sidewalk or curb caused seepage into the Intlekofers' building. The Intlekofers now appeal the district court's grant of summary judgment for the defendants. Because the Intlekofers' failure to designate an expert on water infiltration was fatal to establishing their negligence case, we affirm the summary-judgment order.

## I.    Background Facts and Proceedings

The Intlekofers own real estate on East Grand Avenue in Monticello. The City owns land just west of the Intlekofers' property. And Reitberry Rental Properties, LLC owns property to the north, abutting the Intlekofers' lot.

On its land, the City constructed a parking lot stretching to the property line. According to the Intlekofers, the City raised the elevation of the parking lot an estimated twelve to eighteen inches higher than the alley that framed the Intlekofers' property. After the City constructed the new lot, Reitberry improved a sidewalk and curb running the length of the dividing line between its property and the Intlekofers' real estate.

Some months after the City and Reitberry finished those projects, the Intlekofers noticed rainwater had stopped flowing freely out of the alley bordering the sidewalk and parking lot. The Intlekofers later found water damage to drywall and cabinets on the west side of their building, which housed an asbestos-

---

[1] Stephen Intlekofer, Jayne Intlekofer, Jeffrey Intlekofer, and Catherine Intlekofer, share ownership of the property. For ease of reference, we refer to the plaintiff property owners collectively as the Intlekofers.

remediation business. The water wicked up the wall from six inches to four feet in height, according to Stephen Intlekofer's deposition testimony. The Intlekofers replaced the damaged drywall and cabinets. But the Intlekofers alleged they could not stop the influx of the water despite digging out the west wall and spraying foam below the water line. The Intlekofers believed the construction projects by the City and Reitberry obstructed the flow of water away from the building.

In May 2017, the Intlekofers sued the City for negligently causing water runoff damage. In August 2017, they filed an amended petition joining Reitberry as a defendant.

To prepare for trial, the City retained Timothy Crabb as an expert witness. Crabb is a building inspector and housing rehabilitation specialist employed by the State of Michigan. Crabb inspected the Intlekofers' building to assess any damage and potential causes for that damage. Crabb observed "no evidence of water infiltration." His inspection report also proffered theories for what may have caused the water damage alleged by the Intlekofers. Those theories included a lack of gutters; cracks between the lower walls that were caulked or covered with spray foam, which is not a water-proofing product; and a leaking sink surrounded by water-damaged stripping.

By contrast, the Intlekofers did not designate or retain an expert witness to testify on the topographical changes and the corresponding impact on the water flow, nor to rebut the opinions from Crabb's inspection.

In October 2018, Reitberry moved for summary judgment, asserting the Intlekofers missed the deadline for designating an expert witness on causation. The City joined Reitberry's motion. The Intlekofers resisted, arguing "[i]t is

common knowledge that water flows downhill, not uphill. An expert is not necessary to establish such elemental propositions."

A month later, the district court granted summary judgment, finding an expert witness was required and the Intlekofers failed to designate one by the deadline. The district court dismissed with prejudice all claims against Reitberry, as well as all claims for water damages against the City.[2] The Intlekofers appeal the grant of summary judgment.

## II.     Scope and Standard of Review

We review the grant of summary judgment for correction of legal error. *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017) (citing *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008)). Summary judgment is proper if the record reveals no genuine issue of any material fact, entitling the moving party to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). "A fact is material when its determination might affect the outcome of a suit." *Linn*, 903 N.W.2d at 342. When reasonable minds can differ on resolving a factual question, a genuine issue of material fact exists. *Id.* Thus, our review is limited to the existence of such a genuine issue of material fact and if the district court correctly applied the law. *Id.*

We review the evidence in the light most favorable to the non-moving party. *Id.* In evaluating summary judgment, we consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to determine whether a genuine issue of material fact exists. Iowa R. Civ. P. 1.981(3).

---

[2] The district court set all remaining claims against the City for trial. The Intlekofers voluntarily dismissed those claims, removing the case from the trial calendar in November 2018.

The Intlekofers, "as the nonmoving party, 'cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented.'" *Linn*, 903 N.W.2d at 342 (quoting *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007)).

## III. Analysis

The Intlekofers blame the City's elevation of its new parking lot and Reitberry's construction of a sidewalk and curb for changing the water flow onto their property. The Intlekofers allege the City and Reitberry's negligence damaged the building. On appeal, the Intlekofers fault the district court for requiring them to line up expert testimony to prove the defendants' projects caused the water incursion.

To be actionable, a claim of negligence must satisfy four elements: (1) existence of a duty, (2) failure to conform to that duty, (3) causation, and (4) damages. *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004). This summary-judgment appeal focuses on the third element—causation. In place of the two-pronged causation test (cause in fact and proximate cause), we now decide whether the alleged harm resulted from risks within the defendants' scope of liability. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009). Under that formulation, the Intlekofers must show but for the defendants' wrongful conduct, they would not have incurred water damage. *See id.* at 838.

The Intlekofers rely on *Garr v. City of Ottumwa* for their position that plaintiffs do not always need expert testimony to establish causation. 846 N.W.2d 865, 870 (Iowa 2014). True enough, that general proposition prevails when the subject matter is "within the common experience of laypersons." *Id.* at 872 (quoting *Estate*

*of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 83 (Iowa 2002)). It is even possible to proceed without an expert when "'under the evidence and *facts of common knowledge* plaintiff's theory is reasonably probable, not merely possible, and more probable than any other theory based thereon.'" *Doe v. Central Iowa Health Sys.*, 766 N.W.2d 787, 793 (Iowa 2009) (quoting *Stickleman v. Synhorst*, 52 N.W.2d 504, 507–08 (Iowa 1952) (finding an expert was not required to establish causation when a physician incorrectly inserted a needle into patient's throat causing profuse bleeding)). But on the flipside, when the connection between the defendant's negligence and the plaintiff's harm is outside a layperson's common knowledge and experience, "the plaintiff needs expert testimony to create a jury question on causation." *Id.* at 793. In *Garr* itself, the court found "establishing a causal link between the topographical changes and flooding requires expert testimony." 846 N.W.2d at 872.

Faced with that precedent, the Intlekofers contend *Garr* is "factually distinguishable from the present case" given the scale of land and rainwater involved. As they point out, *Garr* involved a watershed of more than 2000 acres (rather than an alley) and a 100-year-flood event (rather than normal rainfall). In the Intlekofers' less complex scenario, they insist the defendants' construction projects obstructed the downhill flow of water. In the Intlekofers' view, "no expert witness is needed to attest to this law of nature."

The City and Reitberry reject the notion that the Intlekofers can proceed based only on claimed "common sense" assumptions about water flow. They contend *Garr* does not allow a plaintiff to prove a negligence case involving this kind of water intrusion on lay opinion alone "especially where, as here, a defense

expert has identified multiple other sources of water intrusion into [the Intlekofers'] building."

We agree with the defendants' reading of *Garr*. While it may be within the jury's common knowledge and experience that "water flows downhill," whether changes in topography[3] caused water damage to a nearby building is a technical or scientific matter calling for an expert opinion. The Intlekofers' theory, though possible, is not—on the evidence presented—more probable than those the City proffered. *See Doe*, 766 N.W.2d at 793. The City retained an expert who raised alternative theories about the source of the water infiltration in the Intlekofers' building. Under these circumstances, the Intlekofers needed to identify an expert by the pretrial deadline to present an actionable negligence claim against the City and Reitberry. Because the Intlekofers cannot, as a matter of law, prove an element of their negligence claim, the district court properly rendered summary judgment for the City and Reitberry. *See Kubik v. Burk*, 540 N.W.2d 60, 64 (Iowa Ct. App. 1995) (finding summary judgment appropriate when expert testimony is needed but unavailable).

**AFFIRMED**.

---

[3] The dictionary defines topography as "the configuration of a surface including its relief and the position of its natural and man-made features." *Topography*, *Webster's Third New International Dictionary* 2411 (3d ed. 2002).