# IN THE COURT OF APPEALS OF IOWA

---

No. 24-0569
Filed January 7, 2026

---

**Savannah Cook,**
Plaintiff–Appellant,

v.

**Travis Herduin,**
Defendant–Appellee.

---

Appeal from the Iowa District Court for Jasper County,
The Honorable Stacy Ritchie, Judge.

---

**AFFIRMED**

---

Gary Dickey and Matthew M. Sahag of Dickey, Campbell & Sahag Law
Firm, PLC, Des Moines, attorneys for appellant.

Steven T. Durick, Marshall W. Tuttle, and Jordan R. Reed of Durick,
Tuttle, Smith PLC, Des Moines, attorneys for appellee.

---

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A jury rejected Savannah Cook's $20 million claim for pain and suffering, loss of body, and lost wages after a car crash with Travis Herduin — who negligently pulled into an intersection while both were traveling at or below twenty-five miles per hour. The jury agreed with Herduin that Cook had failed to prove the collision caused her claimed damages. And Cook now appeals, challenging the jury instruction on causation and arguing that the district court should have granted her judgment notwithstanding the verdict or a new trial because of the evidence of causation that she introduced at trial.

The district court did not err in instructing the jury that it had to find that Cook's damages "were caused by the collision" rather than by Herduin's conduct. Because Herduin admitted that his negligent conduct was the only cause of the collision and other instructions explained this context, the instructions fairly covered the issues, did not materially misstate the law, and are not misleading or confusing.

Neither did the court err in denying Cook judgment notwithstanding the verdict or abuse its discretion in denying a new trial based on the evidence on causation in the record. While Herduin did not call his own expert witness, he still generated a material factual dispute over causation by raising serious questions about Cook's credibility in reporting her symptoms and the reliability of her experts' opinions based mainly on her reports. And we see nothing untenable or unreasonable in the district court's exercise of its discretion by declining to interfere with the jury verdict. We thus affirm the district court's judgment dismissing Cook's petition against Herduin.

## I.  Background Facts and Proceedings

One morning in October 2020, Herduin and Cook were each driving to work down intersecting residential streets. As Herduin approached the intersection, he stopped at a stop sign. The intersecting street, on which Cook was driving, did not have a stop sign. Herduin looked both ways but did not notice Cook coming toward the intersection from the right. So he proceeded into the intersection. As his truck was partway across, Cook's car hit the passenger side of Herduin's truck near the rear tire.

The speed limit was twenty-five miles per hour on both roads. And both Cook and Herduin were driving at or below that speed when the cars collided. According to Cook, "a truck just appear[ed] in front of me." The driver's side front bumper and hood of Cook's car caught beneath the running board of Herduin's truck. But no airbags deployed during the collision. Cook was wearing her seatbelt. And Cook refused medical care at the scene and proceeded to go to work in a different vehicle.

Cook eventually sued Herduin for negligence. Herduin admitted that his negligence in failing to yield to oncoming traffic caused the collision. And he did not fault Cook's conduct as contributing to the collision in any way. So this much of the facts was not in dispute. Rather, the four-day jury trial focused on what happened next as Cook sought to prove that the collision caused her to suffer damages and, if so, the extent of those damages.

Cook sought nearly $20 million in damages from Herduin. She asked for $887,000 in lost past and future lost wages—based on the assumption she can never work again, with three years of past partial wages and thirty-three years of future wages (until Cook would be seventy years old). She also asked for $19 million, split as the jury saw fit between the past and future loss of body and pain and suffering. She did not seek medical expenses.

3

According to Cook and her two expert witnesses, she suffered severe physical and mental impairments from the collision that limited her function and caused her pain and suffering. She calculated a 69% impairment rating by combining the physical impairment described by one of her experts—"post concussion, visual snow, cognitive impairment, and cervicalgia"—with the mental impairment described by the other expert—"depression with anxious distress, persistent depressive disorder, somatic function disorder, and unspecified neurocognitive disorder."

But initially, Cook reported to her doctor merely that she was having neck and back pain—she made no mention of hitting her head, losing consciousness, memory issues, or dizziness. According to her testimony, she had to leave work within an hour on the day of the collision because her arm hurt to lift. So she went home to sleep and visited the doctor that afternoon. She did not return to work for a week and lost her job. A week later, she reported to a physical therapist that a chiropractor provided initial relief before her shoulder pain, neck stiffness, and arm pain and numbness worsened. She also noted some falls and foot control problems over the week.

In April 2021, Cook first reported that she hit her head on the steering wheel during the accident. She repeated that report thereafter to assorted medical providers.

Cook's first expert witness evaluated her in March 2023. She reviewed Cook's medical records and interviewed and examined Cook. The records reviewed included those from a treating neurologist and a neuro ophthalmologist. She opined the October 2020 collision caused "post-concussion syndrome that resulted in the visual snow and palinopsia, as well as cognitive impairment, a worsening of her headaches, right sided hearing loss and tinnitus, or ringing in the ears, as well as cervicalgia or neck pain."

At trial, the expert explained, "it's not necessary to strike your head to have a concussion."

Cook's second expert witness examined her in July 2023. He diagnosed her with major depressive disorder, persistence depressive disorder, somatic symptom disorder (anxiety related to physical symptoms), and unspecified neurocognitive disorder, all of which he found to have been caused or aggravated by the October 2020 collision. He explained to the jury how a concussion—which he also called a "mechanic deformation of the brain"—could occur without a physical impact to the head but through acceleration/deceleration. He testified that mild traumatic brain injuries can present differently among people—for example, some will notice headaches over time as neck or back injuries heal. The expert observed the records to show Cook exhibiting emotional distress and anxiety within a couple of weeks of the accident. He conceded during her evaluation, Cook "had overreporting of her symptoms" and "some unusual and atypical presentations" of symptoms, though her scores were not at the level considered faking symptoms. According to him, "Cook had a previous history of cognitive problems, but she very likely suffered from a cognitive decline secondary to the traumatic brain injury." And he explained the symptoms Cook displayed tended to exacerbate each other—where a trigger of one problem makes all of her symptoms worse.

Cook had preexisting diagnoses of major depressive disorder, persistent depression disorder, and anxiety from before the collision. She also had a long-standing diagnosis of ADHD. But she had stopped her medication a few weeks before the collision—and later reported to evaluating physicians that she stopped due to interactions with symptoms from the collision. A month before the accident, she reported not wearing her prescription glasses

and having concerns of blurred vision, headaches, and eye strain, as well as a history of a lazy eye with eye surgery when she was a child. Still, at trial she insisted she stopped wearing glasses only after the collision—even when confronted with her contrary deposition testimony. And she originally attributed her cognitive difficulties to COVID-19 aftereffects, not her accident. An MRI in 2022 revealed Cook has a cyst around her optic chiasm and a mild congenital brain malformation, but a neurosurgeon told her they would not have been causing her headaches or visual symptoms.

Cook did not attend trial except for her testimony, telling the jury she was avoiding visual stimuli that might trigger her chronic migraines. In her testimony, she described her visual symptoms as including light-caused problems, consistent static, an inability to make out facial features due to distortion, and colored lights (like power lights) multiplying all over her vision. She claimed she could not see exhibits displayed on a screen in front of her or a paper transcript handed to her for impeachment when being cross-examined about them. But when her own attorney presented her an exhibit, she had no difficulty seeing it.

Cook also explained her migraines had changed since the collision and that changes in her depth perception have made driving difficult. And after telling several medical providers she had hit her head during the accident, at trial she said, "I truthfully to this day don't think I hit my head that day. I think it was just the whiplash."

At the close of Cook's case, Herduin moved for a directed verdict on both the causation and damages elements of her claim. On causation, Herduin argued mainly that the experts relied on inaccurate and incomplete subjective information when forming their opinions as confirmed by Cook's

testimony. Cook resisted by saying "credibility determinations are a jury decision" and "not a basis to direct a verdict." The court denied the motion.

Herduin rested without presenting any evidence. And then Cook also moved for directed verdict on causation, arguing "no reasonable juror could find that this crash, given all the testimony that we've heard today, didn't cause [Cook] at least some unpleasant mental health reaction or some bodily discomfort." [1] Herduin countered that a question had been raised about credibility and echoed Cook's earlier statement that it should go to the jury—particularly since the burden was on Cook to prove causation.

The court denied Cook's motion for a directed verdict too. It reasoned that, as Cook had just pointed out, "the jury is still the finder of fact in this issue." And so, although Cook's experts were "not rebutted by defense experts," the jury has "the discretion to completely disregard any witness's testimony and that include[s Cook's] expert witnesses." The court thus summed up, "there is substantial evidence to send that to the jury; however, not enough to remove it from them."

After about two hours of deliberation, the jury returned a special verdict, finding that "Herduin's negligence on October 8, 2020," was not "a cause of damage to" Cook. Following the instructions on the verdict form, the jury did not continue on to find any amount of Cook's damages for the six specific items she requested: past and future "pain and suffering," "loss of body" and "lost wages." And based on the jury's verdict, the district court entered judgment for Herduin and dismissed Cook's petition.

---

[1] Cook also moved for a directed verdict on liability. But Herduin successfully argued that no ruling was necessary because he had admitted fault in his amended answer.

Cook moved for new trial and judgment notwithstanding the verdict. She argued that the causation instruction "was incorrect, misleading, and confusing"—thus requiring a new trial—because it focused the jury on whether "the collision" caused her damages rather than Herduin's "conduct." She also argued she was entitled to judgment notwithstanding the verdict on causation because Herduin failed to generate a factual dispute with his testimony or any expert testimony on that issue. And she asked for a new trial because the evidence showed that the verdict was "contrary to the weight of the evidence and manifestly incorrect."

The district court denied Cook's motion. The court concluded that the jury instruction "correctly states the law," reasoning that Herduin "admitted he was negligent and liable for causing the accident," and so "the Court narrowed the Defendant's conduct for the purpose of causation to the sole issue in the case—the collision—to avoid confusing for the jury." And so it denied Cook's request for a new trial on that ground.

The court also ruled that judgment notwithstanding the verdict was inappropriate because "a reasonable fact-finder could reach more than one conclusion" on causation "from the presented evidence." The court reasoned:

> While [Cook] went to the doctor on the date of the accident and complained of several minor injuries, the accuracy of these complaints were called into question by her inconsistent statements to medical providers throughout the admitted medical records.
>
> Likewise, the testimony of the expert witnesses that the accident was the causation for the damages alleged by [Cook] was solely based on the self-reporting of [Cook]. They testified that the injuries she claimed were not able to be diagnosed with independent scientific medical tests but could only be diagnosed based on her self-reports. This raises an inference that if her self-reporting was in error, their expert opinion is based on faulty data.

8

Finally, the court rejected Cook's requests for a new trial based on the court's evaluation of the causation evidence. The court reasoned that the verdict was supported by substantial evidence, there was no risk that it was influenced by passion or prejudice benefitting Herduin, and that "the verdict effects substantial justice." The court emphasized again that Cook "relied solely on her self-reporting to medical providers, expert witnesses, and the jury." And it elaborated:

> On cross-examination, [Cook] acknowledged multiple inconsistent statements made by her to medical providers, expert witnesses, and the jury. Additionally, the majority of the injuries claimed by [Cook] as being caused by this low-speed, relatively minor car accident were medical and mental health issues she had sought help for prior to the accident. Although she claimed they were aggravated by the accident, there was no scientific corroboration of her assertions.

Cook now appeals.

## II.    Jury Instruction on Causation

We first consider Cook's claim that she is entitled to a new trial because the jury instruction on causation was incorrect, misleading, and confusing. "We review alleged errors in jury instructions for correction of errors at law." *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 570 (Iowa 2017). (cleaned up). "Reversal is required when jury instructions contain a material misstatement of the law or are misleading or confusing." *Id.* at 579 (cleaned up). But the district court "is free to draft jury instructions in its own language as long as the instructions fairly cover the issues"—it "need not use the terms suggested by the parties." *Hoekstra v. Farm Bureau Mut. Ins.*, 382 N.W.2d 100, 110 (Iowa 1986). And we must consider the jury instructions "in their entirety when assessing" whether they have resulted in prejudicial error. *Haskenhoff*, 897 N.W.2d at 570 (cleaned up); *see also State v. Schwartz*, 7 N.W.3d 756, 765–66 (Iowa 2024) ("In determining whether the

jury instructions correctly stated the law, the court reviews the instructions as a whole to determine their accuracy." (cleaned up)).

Cook challenges Jury Instruction Number 8, which instructed: "To award damages, you must find they were caused by the collision. A collision is a cause of damage when the damage would not have happened except for the collision." She contends that rather than referring to "the collision," the instruction should have referred to "the conduct of the defendant," like the Iowa State Bar Association's Model Jury Instruction 700.3.[2]

To be sure, Cook is correct—as an abstract statement of the law—that a plaintiff must prove that the defendant's conduct caused her damage. *See Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014). But here, Herduin admitted that his negligent conduct caused the collision and did not argue that the negligence of Cook or anyone else had a role in the collision. So the instruction is an accurate statement of the law applied to the facts in dispute here—any damages "caused by the collision" were necessarily caused by Herduin.

The marshaling instruction, given immediately before the challenged instruction, leaves no doubt about this context, instructing in part:

> The Defendant admits that he was at fault for the accident. The Plaintiff must prove both of the following propositions:

---

[2] That model jury instruction reads: "*Cause - Defined*. The conduct of a party is a cause of damage when the damage would not have happened except for the conduct." Cook proposed the following modified version of that instruction in the district court: "To award damages you must find they were caused by the conduct of the defendant. The conduct of the defendant is a cause of damage when the damage would not have happened except for the conduct. There can be more than one cause or damage." On appeal, Cook challenges only the court's refusal to replace "collision" with "conduct of the defendant."

1. The defendant's fault was a cause of the plaintiff's damage.

2. The amount of damage.

If the Plaintiff has failed to prove either of these propositions, the Plaintiff is not entitled to damages. If the Plaintiff has proved both of these propositions, the Plaintiff is entitled to damages in some amount.

Reviewing the instructions as a whole against the factual record in dispute, they fairly covered the issues, did not materially misstate the law, and are not misleading or confusing. We thus affirm the district court's denial of Cook's motion for a new trial on this ground.

## III. Evidence of Causation

Cook next argues that given the trial evidence on causation, she was entitled to judgment notwithstanding the verdict or a new trial. She contends that her testimony, the testimony of her expert witnesses, and the medical records—unrebutted by any defense witnesses—left no material factual dispute that the collision caused at least some injury. And according to Cook, even if the evidence generated a fact question, the court should have exercised its discretion to grant a new trial because the verdict awarded inadequate damages and failed to administer substantial justice.

*Judgment Notwithstanding the Verdict.* We review the denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *Royal Indem. Co. v. Factory Mut. Ins.*, 786 N.W.2d 839, 846 (Iowa 2010). In doing so, "we simply ask whether a fact question was generated" while "view[ing] the evidence in the light most favorable to . . . the nonmoving party." *Id.* And we are mindful that "[i]t is for the jury to determine the credibility of witnesses." *Carter v. Carter*, 957 N.W.2d 623, 635 (Iowa 2021). "Because the issues of negligence and causation are questions for the jury, we will decide these

issues as a matter of law only in exceptional cases." *Crow v. Simpson*, 871 N.W.2d 98, 105 (Iowa 2015).

This is not such an exceptional case. A material fact dispute existed over whether the collision caused Cook's claimed damages for pain and suffering, loss of body, and lost wages. True, Herduin did not call any of his own witnesses—expert or otherwise—to disprove Cook's theory that the collision caused $20 million in damages. But Cook—not Herduin—had the burden to prove causation. *See Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 893 (Iowa 1996) ("It is firmly established in the case law of Iowa that the plaintiff in a negligence suit bears the burden of proof on the issue of causation and damages."). And the jury was not required to believe Cook's testimony about her symptoms, her experts' opinions based mainly on Cook's reporting of her symptoms, or Cook's reports of her symptoms to medical providers recounted in the medical records. *See Crow*, 871 N.W.2d at 105 ("[T]he jury is free to accept or reject any testimony, including uncontroverted expert testimony.").

Indeed, through cross-examination of Cook's witnesses and the introduction of parts of her medical records, Herduin raised many doubts about Cook's credibility. Among other things, he highlighted her initial lack of complaints about her head, brain, or cognitive issues and her shifting statements about whether she hit her head in the collision—initially denying that she did so for the first six months after the collision, then reporting that "she hit her head a couple of times on the steering wheel," and then by trial, testifying "I truthfully to this day don't think I hit my head." She also testified at trial inconsistently with her deposition testimony about whether she stopped wearing her glasses after the collision or before. And the jury got to see firsthand how Cook behaved while testifying—easily seeing an exhibit

handed to her by her attorney but claiming she could not see exhibits displayed on a screen in front of her by opposing counsel or a paper transcript handed to her by opposing counsel to impeach her.

Because the experts' opinions were based mainly on Cook's subjective complaints of her symptoms—directly to the experts and to other medical providers as recounted in her medical records that they reviewed—the jury likewise could have found that their opinions were not reliable. So too could the jury have weighed against Cook the fact that both experts were paid by her attorney to provide their opinions. *See Kinseth v. Weil-McLain*, 913 N.W.2d 55, 69–70 (Iowa 2018).

On appeal, Cook contends that even if the jury disbelieved her claims of extensive physical or mental impairment, there is still no factual dispute that she suffered *some* injury—pointing out that the evidence showed that in the days immediately after the collision she complained of pain in her neck and upper back. Cook even suggests that "Herduin's trial strategy was essentially to concede Cook's back and neck injury while attributing the traumatic brain[] injury to feigning symptoms and pre-existing conditions." True, most of the attention at trial by both parties—as one would expect given Cook's request for $20 million in damages—appears to have been on the causation of her more serious claims of injury. But in their closing arguments, both parties addressed Cook's initial complaints of back and neck injuries. Cook emphasized her medical records showing those initial complaints and the need for the jury to find in her favor on causation if the collision caused even "one shred of physical discomfort or mental pain." Herduin responded:

> I briefly want to talk to you about the neck and back issues. It wasn't a big issue in this case; the plaintiff and her witnesses spent the majority of the

time trying to get you to disregard your common sense about the brain injury she's claiming.

But just because the plaintiff presented for medical treatment and reported that she had pain in these areas does not mean that you just have to accept that, ladies and gentlemen. If you find that she's not credible and you don't believe her testimony, you can question those reports that she made to her doctors about her pain at the time. You don't just have to accept it, ladies and gentlemen.

The jury's verdict shows that it did not believe Cook and did not accept the truthfulness of her testimony at trial or her reports in the medical records about her neck and back pain either. This was a question for the jury to decide. *See Crow*, 871 N.W.2d at 105. We thus affirm the district court's denial of Cook's motion for judgment notwithstanding the verdict.

*New Trial.* We review the district court's denial of a new trial because of an inadequate verdict or failing to effect substantial justice for an abuse of discretion. *See Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 635 (Iowa 1997); *see also* Iowa R. Civ. P. 1.1004(4) (authorizing district court to grant a new trial because of "inadequate damages appearing to have been influenced by passion or prejudice"); *Crow*, 871 N.W.2d at 108 (discussing district court's "inherent power to grant a new trial when a verdict fails to administer substantial justice"). "We will find an abuse of discretion only when a district court has exercised its discretion on grounds clearly untenable or to an extent clearly unreasonable." *Crow*, 871 N.W.2d at 108 (cleaned up).

Cook makes a single argument based on these "inextricably linked" grounds.[3] As with her argument for judgment notwithstanding the verdict,

---

[3] Cook also cites other grounds in rule 1.1004 and includes a stray reference to the sufficiency of the evidence. But we address the single argument for a new trial that is fully developed for our consideration.

she focuses on the trial evidence that "Cook sought and received medical treatment almost immediately after the accident" and "the lack of contrary evidence," arguing that this shows she "suffered a compensable injury due to the accident" and the jury was "required to return a verdict of at least minimal damages."

But as discussed above, there is substantial evidence in the record supporting the jury's finding that Cook failed to prove causation. And "with benefit of seeing and hearing witnesses, observing the jury and having before it all incidents of the trial," the district court "did not see fit to interfere with the jury's verdict." *Foggia*, 543 N.W.2d at 891 (cleaned up). It carefully considered the trial record and reasoned that the verdict was supported by substantial evidence, there was no risk that it was influenced by passion or prejudice benefitting Herduin, and that "the verdict effects substantial justice." This was not clearly unreasonable or clearly untenable.

In arguing otherwise, Cook places much weight on *Johnson v. Knoxville Community School District*. There, a ten-year-old student fell and hit his head on an elementary-school playground, "was diagnosed with a closed head injury," life-flighted to a Des Moines hospital for intensive care, before being discharged a couple of days later. *See Johnson*, 570 N.W.2d at 634. Our supreme court reversed the denial of a motion for new trial after a jury found that none of the damages requested in the student's personal-injury suit were proximately caused by the defendant. *See id.* at 642. But unlike here, the defendant stipulated not only that its conduct was negligent but also that the plaintiff's medical costs for doctor's visits and a hospitalization "amounted to $10,171.33, and agreed that the amount was 'fair, reasonable and necessary.'" *Id.* So the court held that "[s]ubstantial justice was not effected by the jury's total denial of any damages recoverable by the plaintiffs."

Because there is no similar agreement between Cook and Herduin on any part of Cook's claimed damages—indeed, she did not even seek damages for medical costs—*Johnson* is distinguishable. And as we see no other basis in the record to conclude that the court abused its discretion in denying Cook's motion for a new trial, we affirm the district court's judgment dismissing Cook's petition.

**AFFIRMED.**