# IN THE COURT OF APPEALS OF IOWA

No. 24-1768
Filed April 15, 2026

**The Estate of Donnie Locklear Jr.,**
Plaintiff–Appellant,

v.

**Muscatine County, Sheriff Quinn Riess, Individually, Various John Does and Jane Does, Individually,**
Defendants–Appellees.

Appeal from the Iowa District Court for Muscatine County,
The Honorable Elizabeth O'Donnell, Judge.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

James C. Larew of Larew Law Office, Iowa City, attorney for appellant.

Wilford H. Stone and Daniel M. Morgan of Lynch Dallas, P.C.,
Cedar Rapids, attorneys for appellees.

Considered without oral argument
by Tabor, C.J., and Greer and Buller, JJ.
Opinion by Tabor, C.J. Special concurrence by Greer, J.

1

**TABOR, Chief Judge.**

The estate of Donnie Locklear Jr. challenges the district court's grant of summary judgment to Muscatine County on his claims of negligence, reckless disregard, and open records violations.[1] On his open-records claim, we agree the county was entitled to judgment as a matter of law. But on his negligence and reckless-disregard counts, we find the district court erred in applying a medical negligence standard to the entirety of Locklear's claims. Thus, we affirm in part, reverse in part, and remand for further proceedings.

## I.    Facts and Prior Proceedings

Officers with the Muscatine Police Department arrested Donnie Locklear Jr. in the early morning hours of May 17, 2020.[2] During the encounter, the officers instructed Locklear to put his "large barking dog" away in the house, but he did not. They transported Locklear to the Muscatine County Jail—first holding him in the sally port.[3]

While in the sally port, Locklear shook and began to hyperventilate. Video footage from the officers' bodycams confirms his obvious distress.[4]

---

[1] After Locklear died in April 2025, we granted a motion to substitute his estate as the appealing party. In his suit, Locklear named Muscatine County, Sheriff Quinn Riess, and other John Does and Jane Does. In this opinion, we will refer to the appellee-defendants collectively as the county.

[2] We glean this narrative from the county's statement of undisputed facts.

[3] When Locklear was arrested, the jail was enforcing precautions for the COVID-19 pandemic. Under those guidelines, the jail staff would not admit Locklear at first because of the low level of his offense. To ensure his admission, the officers elevated the charge to domestic abuse assault.

[4] It does not appear that the district court referenced the bodycam footage of these events in its ruling. But the parties stipulated to the footage being part of the record, and we consulted the footage in deciding this appeal.

Locklear explained that he had an anxiety disorder causing his chest to hurt. The officers, in front of the jail staff, downplayed the seriousness of his situation, saying: "You're working yourself up." The officers continued to discount his symptoms, saying he "was fine when we were on our way here." Locklear denied "faking" his pain, telling the officers, "My chest. I'm really hurting man." As a minimal accommodation, the officers provided Locklear with a chair while he waited. But as Locklear continued to describe his pain, a police supervisor refused to do more: "You tried to sic a dog on these officers and you're sitting in that chair asking me for help?"

The jail took custody of Locklear around 2:13 a.m.—almost twenty minutes after his arrival. During the booking process, Locklear struggled to articulate his medical history and conditions but did report he took blood pressure medication. He did not know the name of the drug. After Locklear disclosed thoughts of self-harm, the shift supervisor placed him on suicide watch, requiring jailers to check on him every fifteen minutes and record their observations. Those supervision logs note he was "shaking" and "anxious" at times during his jail stay.

After this point, jail-retained medical staff became involved. An on-site nurse and physician's assistant at another location were looped in, and they offered various interventions, including requesting records from Locklear's medical care providers. In addition, a correctional officer checked Locklear's vital signs. On May 18, when Locklear complained of chest pain, Corporal Witt performed the jail's chest pain protocol. Again, the physician's assistant and the nurse offered advice and care. Throughout this time, a care log was kept which described Locklear's condition, the interventions, and some notes that on two occasions his shaking started after becoming aware of approaching staff.

The next morning, May 19, Locklear again complained of chest pain. The jail received his medical records from UnityPoint. After giving Locklear low-dose aspirin, they called paramedics to the jail. They took him to the UnityPoint emergency department, after which an ambulance transferred him to the University of Iowa Hospitals and Clinics. Later, Locklear was diagnosed with a renal infarction involving large portions of his right kidney and renal artery stenosis.

Fast forward to August 2020. During his criminal prosecution, Locklear served a subpoena seeking access to jail records. The jail successfully moved to quash the subpoena. In March 2022, Locklear made a public records request under Iowa Code chapter 22, seeking "all documents related to the detention of Donnie Locklear, Jr. at the Muscatine County Jail between May 16, 2020 and May 21, 2020." In April 2022, the county responded that it had located "approximately 250 pages of records" and informed Locklear that the production of the records would require prepayment. The county also explained that its practice was to delete video recordings after thirty days for most jail areas, and after 180 days in other locations, so any footage regarding Locklear's stay was no longer available. Locklear never followed up.

But in December 2023, Locklear's attorneys received audio and video footage of Locklear's incarceration. The county's law firm explained that its first response was "based on the information available to it at the time of the request," and that the video "was only just recently discovered in an old file" belonging to an attorney who left the firm in the summer of 2021. The county added that the departing attorney handled the motion to quash in Locklear's criminal case, and after the motion to quash was granted, the video had been placed in storage. The county's law firm wrote:

> Muscatine County's April 25, 2022, public records response is entirely accurate. At the time of the request, Muscatine County did not have any [jail] video involving Mr. Locklear in its possession. The video was in our possession, but we did not know it until it was located while doing a physical file deep dive to double check for any information that would be responsive to Mr. Locklear's discovery requests.

In May 2022, shortly after Locklear made his public records request and before receiving the footage, Locklear sued the county. Locklear brought six claims: (1) deprivation of due process in violation of article 1, section 9 of the Iowa Constitution, (2) unreasonable detention or denial of medical care in violation of article 1, section 17 of the Iowa Constitution, (3) negligence, (4) reckless disregard for his care and safety, (5) deliberately indifferent policies, practices, customs, training, and supervision, and (6) violation of Iowa Code chapter 22 open records laws.

The district court dismissed counts (1), (2), and (5), leaving his claims of negligence, reckless disregard, and an open records violation to proceed. The county moved for summary judgment on those three claims. Locklear resisted and cross-moved for partial summary judgment. He argued there were genuine issues of material fact for his negligence and reckless-disregard allegations and that he was entitled to summary judgment on his open-records claim. The district court granted the county's motion for summary judgment on all three claims. Locklear appeals.

## II.    Scope and Standard of Review

We review a summary judgment ruling for correction of errors of law. *Hollingshead v. DC Misfits, LLC*, 937 N.W.2d 616, 618 (Iowa 2020). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018) (citation omitted).

"[W]e review the record in the light most favorable to the nonmoving party." *Id.*

Summary judgment is rarely proper in negligence cases. *Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021). But it "may be appropriate in an instance in which expert testimony is required to establish negligence or foundational facts, and expert testimony is unavailable, therefore no genuine issue of fact can be proved." *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 11–12 (Iowa 1999) (reversing district court's dismissal of the case because expert testimony was not required for a negligence claim not involving professional negligence).

We examine the record "to determine whether a genuine issue of material fact exists and whether the law was correctly applied." *Alexander v. Med. Assocs. Clinic*, 646 N.W.2d 74, 75 (Iowa 2002) (citation omitted).

## III.  Analysis

This appeal involves the grant of summary judgment for the county on Locklear's claims of negligence, reckless disregard, and open records violations. For the first claim, the district court found that Locklear needed a medical expert to prove the county's negligence. Because Locklear had no medical expert, the court ruled for the county as a matter of law. For the claim of reckless disregard, because recklessness is a higher bar than negligence, the district court found that claim also failed for lack of an expert. Third, the district court granted summary judgment to the county on the open-records claim because Locklear could not show that the delay in finding the jail video footage was unreasonable.

On the first two claims, we find the district court painted with too broad a brush by granting summary judgment entirely under a medical

negligence framework. We reverse and remand on a narrow swath of Locklear's claims that rely on ordinary negligence. On Locklear's open-records claim, we affirm the district court's grant of summary judgment to the county.

## A. Negligence

Locklear and the county disagree on how to characterize his claim. The county contends Locklear is bringing a medical negligence claim and must present a medical expert to establish his case. But Locklear insists that he is alleging ordinary negligence which requires no medical expert. In his view, a layperson can identify the county's "failure to exercise reasonable diligence in caring for jail inmates." We recognize Locklear's claim evolved during the course of the proceedings. When initially pleading his cause of action, Locklear made several allegations tied to the medical care he received in the jail and asserted he was seeking damages for his "physical injury" because the "severity of [his] condition [was] caused, at least in part, by the delay in medical attention." But as the case moved through the summary judgment stage, Locklear shifted away from the medical care claims and the tie to his ultimate diagnosis upon leaving jail to an argument over the failure to exercise reasonable diligence in the care and the pain and suffering he experienced while at the jail. So, we limit his cause of action to that last urged at the summary judgment hearing.

But does that last-urged argument implicate medical negligence? In deciding who is right about what standard to apply, we start by comparing the elements of ordinary and medical negligence. For ordinary negligence, a plaintiff must show (1) the defendants had a duty to conform to a standard of conduct to protect others, (2) they failed to conform to that standard, (3) that failure was the proximate case of the plaintiff's injuries, and (4) the plaintiff

suffered damages. *See DeSousa v. Iowa Realty Co.*, 975 N.W.2d 416, 420 (Iowa 2022). "Courts look to legislative enactments, prior judicial decisions, and general legal principles as a source for the existence of a duty." *Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 718 (Iowa 1999).

For medical negligence, a plaintiff must prove (1) the applicable standard of care, (2) a violation of that standard, (3) a causal connection between the defendant's violation and the plaintiff's injury, and (4) damages. *Belhak v. Smith*, 21 N.W.3d 535, 548 (Iowa 2025). "Ordinarily, evidence of the applicable standard of care—and its breach—must be furnished by an expert." *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990). And if proof of causation is outside the knowledge and experience of a layperson, Iowa law requires an expert witness to meet that element. *Belhak*, 21 N.W.3d at 548.

Along these battle lines, the parties disagree whether Locklear needs a medical expert to prove his case. The district court found that he did. It framed Locklear's complaint as "failures in his treatment" and rejected his contention that a jury could assess those failures without expert testimony. The court reasoned: "An ordinary layperson does not know the appropriate measures that should be followed by a medical professional working in or for a jail." The county defends the court's ruling, contending Locklear needed an expert to prove the standard-of-care and causation elements.

True, in general, "expert testimony is required to prove professional negligence claims against healthcare providers."[5] *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 539 (Iowa 2022). But Locklear's claim—

---

[5] But not always. "[T]he necessity of expert testimony depends on whether 'the proper course of action' is 'within the common understanding of the jury.'" *Jorgensen v. Smith*, 2 N.W.3d 868, 880 (Iowa 2024) (quoting *Thompson v. Embassy Rehab. and Care Ctr.*, 604 N.W.2d 643, 646 (Iowa 2000)).

at least how it is refined in this appeal—does not allege professional negligence against healthcare providers. Rather, his claim is that the jailers did not conform to the standard of conduct requiring them to furnish inmates with medical aid.[6] Locklear derives the duty of care from common law. *See Heumphreus v. State*, 334 N.W.2d 757, 759 (Iowa 1983) (recognizing jailers owe a common-law duty "to exercise reasonable diligence with reference to the care of injured, ill, or diseased inmates").

We recognize that his petition listed acts of negligence that could be read to include "failures in his treatment." For example, "[f]ailing to provide reasonable care"; "[f]ailing to timely respond to medical concerns . . ."; and "[f]ailing to properly train staff to supervise, protect, and prevent exacerbation of a medical condition." But in resisting the county's motion for summary judgment, Locklear noted "the record shows a total denial of medical care during the first 10 hours of his incarceration." He pointed to that record as creating material issues of fact concerning a violation of the standard of care owed by a jailer within the confines of what is understood by lay members of a jury without medical evidence. By the same token, at the summary judgment hearing, Locklear's attorney argued, "This is not a medical negligence case. This is a wrongful custody, in essence."

Viewing the record in the light most favorable to Locklear, we find he is alleging ordinary negligence—not requiring a medical expert—in the period between his arrival at the sally port and his first access to medical aid when he was seen by a nurse ten hours later. Contrary to the district court's

---

[6] The Muscatine County Jail has policies addressing inmate health conditions. For example, jailers are required "to provide access to appropriate care for serious medical, dental and mental health care needs." These policies track the statutory duty placed on jail keepers to "furnish each prisoner with necessary . . . medical aid. *See* Iowa Code § 356.5(2) (2022).

findings, Locklear is not contesting the performance of the jail's medical staff in treating his condition. Rather, he alleges that the jail staff *denied* him timely access to medical care. Courts have recognized "a distinction between claims based on negligent 'diagnosis, treatment or care,' as contemplated by the medical malpractice statute, and allegations concerning the proper performance of the sheriff's custodial obligations to an inmate." *Darling v. Palm Beach Cnty. Sheriff*, 2 So. 3d 368, 369 (Fla. Dist. Ct. App. 2008) (finding inmate's lawsuit against jail alleging delayed treatment of broken wrist involved claim of ordinary negligence for failures in custodial care).

And what were those custodial obligations? In resisting the county's motion for summary judgment, Locklear relied on the jail's policies.[7] As stated, "It is the policy of the Muscatine County Jail to provide access to appropriate care for serious medical, dental, and mental health care needs."

The district court believed that Locklear tried "to get around the need to establish the standard of care through an expert witness by arguing the standard of care was set by [jail] policies." What troubled the court is that "violating a jail policy cannot give rise to a civil cause of action" under Iowa Code section 356.36(2), which describes the remedy for rule violations:

> The sole remedy for violation of a rule adopted pursuant to this section, is by a proceeding for compliance initiated by request to the Iowa department of corrections. A violation of a rule does not permit any civil

---

[7] Those polies were adopted under Iowa Code section 356.36(1), which required the Iowa Department of Corrections, in consultation with other groups, to "draw up minimum standards for the regulation of jails" and similar facilities. The department drew up those standards, which were then adopted in the Iowa Administrative Code. Those rules require the jail administrator to "establish a written policy and procedure to ensure that prisoners have the opportunity to receive necessary medical attention for the prisoners' objectively serious medical and dental needs which are known to the jail staff." Iowa Admin. Code r. 201–50.15.

action to recover damages against the state of Iowa, its departments, agents, or employees or any county, its agents or employees, or any city, its agents or employees.

The county picks up that point, arguing on appeal that Locklear's only remedy for an alleged violation of a jail policy is "a proceeding for compliance initiated by request of the Iowa Department of Corrections." From there, the county insists that Locklear "may not shirk his burden to establish the duty and alleged breach in a negligence claim by pointing to an alleged violation of a jail policy promulgated under the authority of Iowa Code Chapter 356 (2025) and Title IV, Chapter 50 of the Iowa Administrative Code."

Locklear replies that the county misconstrues his argument. He clarifies that rule violations do not give rise to his civil action. Instead, he contends the jail's policies are relevant to the ability of a reasonable juror to determine the elements of negligence.

But we don't need to decide if the jail policies can help inform the standard of care because we limit our remand to the narrow window of time before he was seen by the nurse. As Locklear contends, the county had a common-law duty to provide him with the necessary attention for any serious medical needs known to jail staff.

As established in *Heumphreus*, a jailer must exercise "reasonable diligence" when attending to ill inmates. 334 N.W.2d at 759. In proving negligence, Locklear must show what conduct by the jail staff falls short of "reasonable diligence."

We also reject the county's contention that Locklear needs an expert to create a fact question on causation. A plaintiff must provide expert testimony "[w]hen the causal connection between the tortfeasor's actions and the plaintiff's injury is not within the knowledge and experience of an

ordinary layperson." *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 793 (Iowa 2009). But "[w]hen the causal connection between the tortfeasor's actions and the plaintiff's injury is within the knowledge and experience of an ordinary layperson, the plaintiff does not need expert testimony to create a jury question on causation." *Id.*

The county contends that Locklear must present expert testimony to tie the jail staff's conduct to his alleged injuries. In its estimation, "should this case go to trial, the jury, full of laypersons and most likely lacking in any kind of medical expertise, will be asked to determine if [the jail staff's] alleged actions or inaction *caused* [Locklear's] renal infarction and renal artery stenosis." The county emphasizes that these are "complex, internal ailments not readily apparent to visual inspection."

But to be clear, Locklear's claim is that he suffered "excruciating pain" waiting for medical treatment, not that the delayed treatment caused or worsened his renal infarction or renal artery stenosis. We agree with Locklear that it is within the knowledge of an ordinary layperson to determine whether someone is suffering as they wait to be treated. No medical expert is required to show causation.

In sum, we find the district court erred in viewing the entirety of Locklear's allegations as a medical negligence claim and in requiring a medical expert to establish the standard of care and causation.

## B. Reckless Disregard

Beyond negligence, Locklear claims that the county's actions constituted a reckless disregard for his care while he was in jail. Our courts recognize separate grounds for tort liability involving a claim of reckless conduct. *Lukken v. Fleischer*, 962 N.W.2d 71, 81–82 (Iowa 2021).

Reckless disregard requires proof of these elements:

> (1) someone performs or fails to perform a duty, (2) they know or have reason to know facts that would cause a reasonable person to realize that there is "an unreasonable risk of physical harm to another," and (3) that "risk [of harm] is substantially greater than that which is necessary to make [the] conduct negligent."

*Mehmedovic v. Tyson Foods Inc.*, 21 N.W.3d 412, 428–29 (Iowa 2025) (quoting Restatement (Second) of Torts § 500, at 587 (A.L.I. 1965)).[8]

In granting summary judgment, the district court found that because Locklear's negligence claim failed for want of expert testimony, so too did his recklessness claim. In the court's words, "[r]ecklessness is more than negligence." The court is right about the standards. Recklessness "means something more than the mere unreasonable risk of harm in ordinary negligence." *Rose v. Oakland Healthcare Mgmt., LLC*, 30 N.W.3d 724, 729 (Iowa 2026) (cleaned up). And recklessness is a difficult standard to meet. *Id.* In brief, recklessness means intentionally doing "an act of an unreasonable character in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it and so great as to make it highly probable that harm would follow." *Leonard ex rel. Meyer v. Behrens*, 601 N.W.2d 76, 80 (Iowa 1999).

We recognize Locklear faces a "high bar" to prove the jailers' conduct was reckless during those first ten hours he was in custody. *See Martinez v.*

---

[8] Under the protections of both the Eighth and Fourteenth Amendments, an inmate alleging deliberate indifference must show "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (citation omitted). Akin to recklessness, "[d]eliberate indifference is more than negligence, more even than gross negligence." *Id.* (citation omitted).

*State*, 986 N.W.2d 121, 125 (Iowa 2023). But because the district court was mistaken in finding that Locklear could not proceed without a medical expert on his entire negligence claim, it was also wrong to automatically reject his claim of reckless disregard. For his part, Locklear contends: "a reasonable jury could find that [the jailers'] mockery of [his] symptoms and their willful, wanton lies in their records describing him as only acting in pain when he knew he was being observed showed their brutal and callous disregard for him." But the court didn't analyze whether the summary judgment record showed a genuine issue of material fact on Locklear's claim of reckless disregard. So we have nothing to review in that regard.

Because the district court erred in finding an expert was required to prove all of Locklear's claims of negligence and reckless disregard, we reverse and remand for proceedings consistent with this opinion. *See Sanford v. Fillenwarth*, 863 N.W.2d 286, 294 (Iowa 2015).

### C. Chapter 22 Open Records

On Locklear's open-records claim, both sides agree there are no genuine issues of material fact. The rub is who should prevail as a matter of law. In his cross-appeal, Locklear argues the district court should have granted him summary judgment because the county unreasonably delayed turning over the video footage he requested.

To succeed on his chapter 22 action, Locklear must show that (1) the county is subject to the open records requirements, (2) the requested materials were government records, and (3) the county refused to make those government records available for him to examine and copy. *See Teig v. Chavez*, 8 N.W.3d 484, 490 (Iowa 2024). Only the third element is in dispute. The statute does not provide a deadline, so it's implied that compliance with the

14

request must occur in a reasonable time. *Id.* at 497. To determine whether there has been an unreasonable delay, we consider:

> (1) how promptly the [county] acknowledged [Locklear's] requests and follow-up inquiries, (2) whether the [county] assured [Locklear] of [its] intent to provide the requested records, (3) whether the [county] explained why requested records weren't immediately available . . . , (4) whether the [county] produced records as they became available . . . , (5) whether the [county] updated [Locklear] on efforts to obtain and produce records, and (6) whether the [county] provided information about when records could be expected.

*Id.* at 497–98 (citation omitted).

Locklear asserts the county "attempted to destroy the records, but left one copy of them in a file that was not revealed to [him] at the time of his chapter 22 request. This is objectively unreasonable conduct as a matter of law." The county responds that Locklear did not preserve his destruction argument. We assume without deciding that Locklear preserved error and turn to the merits.

We find that the district court properly granted summary judgment to the county on the public-records claim for two reasons. First, the court granted the State's motion to quash Locklear's subpoena in 2020. Not bound by that subpoena, the State had no reason to retain the video. Its policy was to destroy the footage after a set time. Because the subpoena was resolved and its destruction policy was in effect, county officials could reasonably believe the records did not exist. Second, after the county responded to his records request in April 2022, it heard nothing further from Locklear. Rather than follow up, he filed suit in May 2022. Because he did not take other action, the county was not required to turn over the records.

Because the delay in turning over footage was not unreasonable, we affirm the grant of summary judgment to the county on this claim.

15

## IV. Conclusion

In conclusion, we agree with Locklear that in alleging jail personnel were negligent—or even reckless—by failing to provide prompt medical attention after seeing his suffering and symptoms, he was raising a claim of deficient custodial care, not medical negligence by health professionals. Thus, we reverse and remand for further proceedings on those claims. But we affirm the grant of summary judgment for the county on the open records violation.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Buller, J., concurs; Greer, J., specially concurs.

**GREER, Judge** (specially concurring).

I concur in the result, agreeing that Donnie Locklear alleged an ordinary negligence claim that was not subject to summary judgment. But, I write to describe the guardrails that I believe apply based upon the record and the law.

Although Locklear pared down his challenge at the time of the summary judgment hearing, there may still be temptation to drag in the medical care assertions that permeated Locklear's earlier arguments to the district court. The narrow focus of this claim is that Muscatine County did not "exercise reasonable diligence" during the ten hours before it is alleged that Locklear finally received medical care and that Locklear suffered pain. *See Heumphreus v. State*, 334 N.W.2d 757, 759 (Iowa 1983). And while jails have a "duty 'to exercise reasonable diligence with reference to the care of injured, ill, or diseased inmates,'" that does not elevate the jailer to a medical decisionmaker. *See Jones v. Dallas Cnty.*, No. 4:23-cv-00129-RGE-HCA, 2024 WL 5717757, at *6–8 (S.D. Iowa Sep. 18, 2024) (quoting *Heumphreus*, 334 N.W.2d at 759) (discussing the concept that prison officials lack medical expertise and cannot substitute their judgment for that of a medical professional).

Then, as to proof of that ordinary negligence claim, Locklear still must establish evidence of the "standard of conduct" implicating the county. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009) ("An actionable claim of negligence requires the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." (cleaned up)). And on this factor, a general duty can be modified. *Id.* at 835. Now, Locklear faces a narrow path again in my view. While Locklear emphasized in his summary judgment arguments that the

jail's "written rules . . . apply to every material fact that this plaintiff has alleged," so the factfinder does not have to go "searching around for some kind of ethereal duty of care that requires an expert to articulate and then to attest to the breach of it," I would find that the jail rules are not to be used by Locklear in his civil suit to recover damages.

A statute prohibits that in my view. In Iowa Code section 356.36 (2022), the legislature stated:

> 1. The Iowa department of corrections, in consultation with the Iowa state sheriff's association, the Iowa peace officers association, the Iowa league of cities, and the Iowa board of supervisors association, shall draw up minimum standards for the regulation of jails, alternative jails, facilities established pursuant to chapter 356A and municipal holding facilities. When completed by the department, the standards shall be adopted as rules pursuant to chapter 17A.
>
> 2. The sole remedy for violation of a rule adopted pursuant to this section, is by a proceeding for compliance initiated by request to the Iowa department of corrections. *A violation of a rule does not permit any civil action to recover damages against the state of Iowa, its departments, agents, or employees or any county, its agents or employees, or any city, its agents or employees.*

(Emphasis added). Legislation that specifically prohibits civil recovery related to conduct that violates a rule must mean something. Here, I would read the statute to prohibit the use of the rules promulgated under this statute to define a standard of care for recovery in a civil lawsuit. The Restatement (Second) of Torts provides:

> *Where no provision for civil liability.* The enactment or regulation may, however, provide only for criminal liability, and not for civil liability; or in rare instances it may merely prohibit certain conduct, and *contain no provision for any liability at all. In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action.*

Restatement (Second) of Torts § 286 cmt. d (A.L.I. 1965) (emphasis added). Thus, while Locklear can move forward with his ordinary negligence claim, as defined above, his path is narrow.